FILED
2011 Feb-24  PM 02:14
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JIMMIE MARIE TERRY o/b/o** | ) | |
| **S.C.T.,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-10-S-1041-S** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Jimmie Marie Terry commenced this action on April 22, 2010, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge, and denying the claim she asserted on behalf of her great-niece and legal ward, S.C.T. ("claimant"), for child supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v.*

*Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant was four years old at the time of the administrative decision and enrolled in preschool. Claimant alleged childhood disability due to attention deficit hyperactivity disorder (ADHD), asthma, eczema, and alcohol addiction at birth.[1] The ALJ found that claimant suffered from the severe impairments of ADHD and oppositional defiance disorder, but he concluded that claimant did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listed impairments.[2] Claimant contends that this decision was neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant argues that the ALJ erred by failing to find that claimant met or functionally equaled Listing 112.11, for ADHD.[3]

Listing 112.11 requires proof of the following:

> 112.11. *Attention Deficit Hyperactivity Disorder:* Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

---

[1]Tr. at 116.

[2]Tr. at 40.

[3]Claimant does not argue medical equivalence to any listing.

    A.    Medically documented findings of all three of the following:

          1.    Marked inattention; and

          2.    Marked impulsiveness; and

          3.    Marked hyperactivity;

AND

    B.    For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. pt. 404, subpt. P, appx. 1, §§ 112.11 (listings). The "appropriate age-group criteria" for older infants and toddlers (age 1 to attainment of age 3) include at least one of the following:

    a.  Gross or fine motor development at a level generally acquired by children no more than one-half the child's chronological age, documented by:

    (1) An appropriate standardized test; or

    (2) Other medical findings (see 112.00C); or

    b.  Cognitive/communicative function at a level generally acquired by children no more than one-half the child's chronological age, documented by:

    (1) An appropriate standardized test; or

3

(2) Other medical findings of equivalent cognitive/communicative abnormality, such as the inability to use simple verbal or non-verbal behavior to communicate basic needs or concepts; or

c.  Social function at a level generally acquired by children no more than one-half the child's chronological age, documented by:

(1) An appropriate standardized test; or

(2) Other medical findings of an equivalent abnormality of social functioning, exemplified by serious inability to achieve age-appropriate autonomy as manifested by excessive clinging or extreme separation anxiety; or

d.  Attainment of development or function generally acquired by children no more than two-thirds of the child's chronological age in two or more areas covered by a., b., or c., as measured by an appropriate standardized test or other appropriate medical findings.

20 C.F.R. pt. 404, subpt. P, appx. 1, §§ 112.02(B)(1) (listings).   The "appropriate age-group criteria" for children age 3 to 18 include at least *two* of the following:

a.   Marked  impairment  in  age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b.  Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

4

     c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

     d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, appx. 1, §§ 112.02(B)(2) (listings).

The ALJ "considered the claimant's impairments individually and in combination, and determined that the medical evidence of record . . . does not document listing-level severity under any child or adult listing . . . ."[4]  The ALJ's decision was supported by substantial evidence.  Specifically, there are no *medically documented* findings of marked inattention, impulsiveness, and hyperactivity, as required by subsection A of Listing 112.11.  Claimant's medical providers did not complete medical source opinion statements to document her level of inattention, impulsiveness, and hyperactivity.  Her preschool teachers did complete Teacher Questionnaires detailing claimant's functional limitations, but those documents cannot be considered *medical* findings.  Furthermore, even though claimant's medical providers did not complete medical source statements, their records do not indicate marked levels of inattention, impulsiveness, and hyperactivity, and they

---

[4]Tr. at 40.

therefore were consistent with the ALJ's finding that claimant did not satisfy any listing, including Listing 112.11.

The ALJ also found that claimant did not have an impairment or combination of impairments that functionally equaled any of the listed impairments. To functionally equal a listing, the claimant's impairments "must be of listing-level severity; *i.e.,* [they] must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain . . . ." 20 C.F.R. § 416.926a(a). The "domains of functioning" to be evaluated include: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; [and] (vi) Health and physical well-being." 20 C.F.R. § 416.926a(1)(i)-(vi). Social Security regulations inform claimants that "marked" limitations in these domains exist

> when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i). "Extreme" limitations exist

6

when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities.  Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked."  "Extreme" limitation is the rating we give to the worst limitations.  However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R.  § 416.926a(e)(3)(i).

The ALJ found that claimant did not have "extreme" impairments in any of the relevant domains, but that she did have "marked" limitations in the domain of acquiring and using information.  The ALJ did not find marked limitations in any of the other domains.[5]  As claimant did not suffer extreme limitations in any domain, and she did not suffer marked limitations in at least two domains, the ALJ found that claimant did not suffer from a disability as defined in the Social Security Act.[6]

Claimant asserts that the ALJ should have found that claimant also suffered marked limitations in the areas of attending and completing tasks, interacting and relating with others, and caring for herself.  She offers no further argument to support that assertion, however, except to state that claimant's biting and hair pulling

---

[5]Tr. at 41-51.

[6]Tr. at 51.

7

tendencies indicate an inability to care for herself.[7]

The court is not persuaded by claimant's conclusory arguments, and instead finds that the ALJ's decision was supported by substantial evidence and in accordance with applicable law.  The ALJ relied heavily on the opinions of the state agency physicians in finding that claimant suffered marked limitations in only the area of acquiring and using information.  Those opinions were based upon claimant's medical records and statements by claimant's legal custodian and day care provider.  The ALJ afforded the state agency physicians' opinions significant weight because those physicians were licensed medical doctors, and because the opinions were consistent with the medical evidence of record and the testimony received during the administrative hearing.[8]  Furthermore, the ALJ's findings with respect to claimant's impairments in each domain of functioning were well-articulated, well-supported, and consistent with the record as a whole.  There is no doubt that claimant suffers from some severe impairments, including ADHD, but the ALJ's decision that claimant did not meet or functionally equal a listing nonetheless was supported by substantial evidence.

Consistent with the foregoing, the court concludes the ALJ's decision was

---

[7]*See* doc. no. 7 (claimant's brief), at 14.

[8]Claimant did not challenge the ALJ's treatment of the state agency physicians' opinion evidence.

based upon substantial evidence and in accordance with applicable legal standards.

Accordingly, the decision of the Commissioner is AFFIRMED.  Costs are taxed

against claimant.  The Clerk is directed to close this file.

DONE this 24th day of February, 2011.

United States District Judge

9